UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
PHILIP HARRIS,

       Plaintiff,

-vs-

ORANGE REGIONAL MEDICAL CENTER,

       Defendant.
------------------------------------------------------X

**07 CIV. 7027**

**COMPLAINT**

**JURY TRIAL DEMANDED**

**JUDGE CONNER**

### INTRODUCTION

1. By and through his attorneys, Sussman & Watkins, plaintiff Philip Harris brings this action to redress the violation of his civil rights, and for false imprisonment and personal injuries caused by defendant.

### PARTIES

2. Plaintiff Philip Harris resides in Goshen, New York, within this judicial district.

3. Defendant Orange Regional Medical Center ("ORMC"), which consists of Arden Hill and Horton Hospitals, is located in Goshen and Middletown, New York, within this judicial district.

### JURISDICTION

4. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1981, 2000d and 28 U.S.C. §§ 1331 and 1343(4) & (4).

5. As plaintiff's State-law claims arise from the same nucleus of operative facts as his Federal claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### FACTUAL AVERMENTS

6. Plaintiff, Philip Harris, is a 61 year-old African-American man. A former collegiate

basketball star, plaintiff stands six foot, ten inches tall.

7. On the evening of June 1, 2007, plaintiff went to the Arden Hill Hospital emergency room near his home in Goshen, New York. Plaintiff went to seek help for pain in his lower back.

8. Upon his arrival at Arden Hill, plaintiff informed intake personnel that he had lower back pain. After he submitted his insurance card, a nurse briefly saw him, took his blood pressure and told him that it was slightly elevated.

9. Plaintiff was then taken to another room adjacent to the waiting area, where a young female intake staff member ("Jane Roe") began to "wand" him with a metal detector. Plaintiff, who was taken aback, asked Roe why she was wanding him, but she did not respond.

10. Another staff member, a tall woman, intervened and asked plaintiff if he had anything metal in his pockets. When plaintiff responded that he had a cell phone and keys, the tall woman responded, "O.K.", and left the immediate vicinity.

11. Roe then began asking plaintiff a series of questions, including whether he wanted to hurt himself or others.

12. Plaintiff responded that he did not and asked Roe why she was asking him such questions. Rather than responding, Roe told him to wait and left his immediate vicinity.

13. Unknown to plaintiff, Roe then telephoned his wife, Angela, at home and asked her if plaintiff was depressed. Angela responded that he was probably stressed after a long week of work, but that he was not otherwise depressed.

14. Plaintiff continued to wait for approximately 45 minutes without receiving any medical attention. At that point, he decided to leave so that Angela could use the car he had driven to the hospital, as she was scheduled to work an overnight shift in her job as a manager at

a local hotel.

15. When plaintiff informed Roe that he was leaving, she responded, "You can't leave." Plaintiff replied that he was leaving and she repeated, "You can't leave."

16. When plaintiff tried to exit the room, he found that its door was locked. He demanded that Roe unlock the door so that he could leave. She refused and apparently sounded an alarm in the hospital.

17. Within a few moments, as plaintiff stood next to the door, four ORMC male staff members ("John Does I-IV") opened the door and rushed into the room.

18. Without provocation or justification, Does I and II grabbed plaintiff by his neck and upper body, while Does III and IV grabbed him by either arm. Plaintiff, who did not resist, was pulled to the floor and landed on his right knee, which had previously been replaced. The blow to his knee caused plaintiff immediate pain and swelling. While on the floor, one of the John Doe employees pressed his knee into plaintiff's lower back, causing plaintiff severe pain.

19. Plaintiff heard a woman yell, "Get him out of here, get him out of here!" At that point, the John Does released their holds on plaintiff.

20. During the course of this unprovoked assault, plaintiff's eyeglasses and watch were broken. Plaintiff collected his broken eyeglasses and exited the room and hospital.

21. On the following day, June 2, 2007, plaintiff contacted Arden Hill about his treatment the night before. A hospital administrator, MaryAnn Clay, told plaintiff to come in to meet with her and plaintiff did so.

22. While at Arden Hill, a woman identified to plaintiff as the hospital president apologized to him and told him that, "The treatment you received was excessive and this will

3

never happen at this hospital again. I'll see to that."

23. Although Clay advised plaintiff that the hospital would reimburse him for his broken watch and glasses, it has failed to do so.

24. Indeed, when plaintiff called the hospital to advise of the replacement costs for his eyeglasses and watch, the hospital staff person with whom he spoke exclaimed, "Oh, you're the guy who jumped on our orderly!" Under the circumstances, this was an egregiously false and hurtful statement, and reflects the fact that ORMC agents promulgated to others a false version of the events which occurred on the evening of June 1, 2007.

25. Plaintiff has experienced, and is reasonably likely to continue to experience, significant conscious physical pain and suffering as a result of the unjustified assault on his person by ORMC staff.

26. He continues to receive medical treatment for his serious physical injuries, including potential nerve damage, which were caused and/or exacerbated by the assault.

27. In addition, defendants' wrongful treatment of plaintiff has caused, and will likely continue to cause, him significant injury to his dignity, as well as emotional distress, humiliation, anger, frustration, sleeplessness and other physical manifestations of distress.

28. Defendant ORMC failed to adequately train and/or supervise Jane Roe and John Does I-IV, and such failure was a proximate cause of the injuries caused to plaintiff.

29. Defendant ORMC is responsible for the wrongful acts of its agents, including John Does I-IV and Jane Roe, as they were acting within the scope of their employment at all relevant times herein.

30. Upon information and belief, ORMC receives federal funding.

31. Defendants' mistreatment of plaintiff was motivated, in substantial part, by his status as a large African-American man. Racial ignorance, stereotype and fear played a significant role in his mistreatment. Had he been Caucasian, defendants would not have mistreated plaintiff as they did.

32. The actions of defendant and its agents were malicious, wanton, shocking to the conscience and outside the norms of human decency. Such actions must be punished and deterred.

**CAUSES OF ACTION**

33. Plaintiff incorporates ¶¶ 1-32 as if re-stated herein.

34. By dint of the foregoing, defendant ORMC violated plaintiff's civil rights under 42 U.S.C. § 2000d and 42 U.S.C. § 1981 by discriminating against him on the basis of his race.

35. By dint of the foregoing, defendant ORMC is liable to plaintiff for assault, battery, false imprisonment and negligence under New York State law.

WHEREFORE, plaintiff prays that this Honorable Court:

a. accept jurisdiction over this matter;

b. empanel a jury to fairly hear and decide this case;

c. award plaintiff compensatory damages in an amount not less than $1,000,000;

d. award plaintiff punitive damages in an amount not less than $1,000,000;

e. award plaintiff his reasonable attorneys' fees and costs; and

f. award plaintiff such other relief as the Court deems just and proper.

Dated: August 1, 2007
      Goshen, New York

S/ *[signature]*
Christopher D. Watkins (CW 2240)
SUSSMAN & WATKINS
40 Park Place – P.O. Box 1005
Goshen, New York 10924
(845) 294-3991
Attorneys for Plaintiff